OCTOBER 5, 1972

No. A–325. AMERICAN PARTY OF TEXAS ET AL. *v.* BULLOCK, SECRETARY OF STATE OF TEXAS. D. C. W. D. Tex. Application for temporary restraining order, presented to MR. JUSTICE DOUGLAS and by him referred to the Court, denied.

MR. JUSTICE DOUGLAS, dissenting.

The American Party, seeking to get on the Texas ballot for this year's election, brought an action which asked a three-judge federal court to hold provisions of the Texas election laws unconstitutional.

Texas has four methods of nominating candidates.

First, those whose party's gubernatorial candidate polled more than 200,000 votes in the last general election may be nominated through primaries. Election Code, Art. 13.02 (1967). Second, those whose party's candidates polled less than 200,000 votes but more than 2% of the total votes cast for governor may be nominated by primaries or by nominating conventions. Election Code, Art. 13.45 subd. 1 (Supp. 1972). Third, those whose party's candidates polled less than 2% of the total gubernatorial vote and those whose party did not have a nominee for governor in the last general election may be nominated by convention only or by fulfilling the requirements of Art. 13.45 subd. 2 of the Election Code (Supp. 1972). Fourth, nonpartisan and independent candidates

may appear on the ballot after meeting the requirements of Art. 13.50 of the Election Code.

The American Party falls in the third category. In order to get its nominees printed on the ballot it must meet the following requirements:

It must by the previous September declare its intention to nominate by convention. That entails a statewide party organization with an executive committee. It also requires the filing with the Secretary of State by February of the names of the candidates; it requires the filing of party rules by March. It requires the holding of precinct conventions on the day of the primary and the holding of county conventions the following week and a state convention on a day certain.

The American Party must in addition do the following:

(1) It must furnish a list of participants in each precinct convention with the names, addresses, and registration certificate numbers of qualified voters attending such conventions. The names on the list must total at least 1% of the total votes cast for governor at the last preceding general election.

(2) If the number of qualified voters attending the precinct conventions is less than 1%, there must be filed a petition requesting that the names of the nominees be printed on the election ballot, signed by a sufficient number of additional qualified voters to make a combined total of at least 1% of the total votes cast for governor in the last election.

(3) No person who during the voting year voted at any primary election or participated in any convention of any other party may attend the minority party convention or sign the petition. If he does, he is subject to criminal penalties.

(4) The petition may not be circulated until after the date set for the holding of the major parties' primaries. Signatures must be certified before 20 days after the date

of the party's convention, which in 1972 gave it approximately 53 days to gather signatures.

(5) Each person who signs a petition must be administered an oath before a notary public at the time he signs.

This election scheme is not as severe or oppressive as the one we condemned in *Williams* v. *Rhodes,* 393 U. S. 23; nor is it as benign as the one we approved in *Jenness* v. *Fortson,* 403 U. S. 431.

While Texas requires only 1% of the voters for governor to endorse the new party, that requirement must be met by obtaining signatures of those attending precinct conventions, supplemented, if need be, by signatures obtained after the primaries. But all cross-over signing is barred and it is supported by criminal sanctions. Moreover, the supplemental signatures can be obtained only after the major parties have held their primaries. And only a 55-day period is available for obtaining the necessary signatures.

While the requirement of 1% of the total vote for governor may be less than Georgia's requirement of 5% of those eligible to vote in the last election for the filling of the office the candidate is seeking, the Texas machinery for launching a minority party is almost as cumbersome and involved as the one we struck down in *Williams* v. *Rhodes.*

The minority party must be statewide even though its appeal may be essentially to urban voters or to rural voters, as the case may be. That requirement did not appear in Georgia's scheme.

In Georgia 180 days was allowed for circulating a nominating petition; in Texas, less than 60 days.

In Georgia the minority party had to meet the same deadline as did candidates running in the primaries of the regular parties. In Texas the regular parties first have their primaries; only then can a minority party

solicit signatures for its candidates. Moreover, no one who voted in a primary is eligible to sign the petition for the minority party.

The minority party therefore must draw its support from the ranks of those who were either unwilling or unable to vote in the primaries of the established parties.

The minority party therefore cannot compete with the regular parties; it must be content with the leftovers to get on the ballot.

We said in *Jenness* v. *Fortson, supra,* at 438, "Georgia's election laws, unlike Ohio's, do not operate to freeze the status quo." Texas, though not as severe as Ohio, works in that direction. It therefore seems to me, at least prima facie, to impose an invidious discrimination on the unorthodox political group.

Perhaps full argument would dispel these doubts. But they are so strong that I would grant the requested stay so that candidates for the American Party may get on the Texas ballot for next month's presidential election. To do so it must be certified by the Secretary of State no later than October 6. We cannot possibly decide the merits by that date. But if the American Party is on the ballot, the voting and associational rights which we have been alert to protect will be honored; and if meanwhile the merits are reached and we affirm the three-judge court, holding the Texas scheme constitutional, the ballots will not be counted. That was the way Justice Black avoided the dilemma in a Florida case;* and I would follow his course here.

---

*See *Davis* v. *Adams,* 400 U. S. 1203.